UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 18-1062

---

SUN CHEMICAL CORPORATION,

Appellant

v.

FIKE CORPORATION;
SUPPRESSION SYSTEMS INCORPORATED

---

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-13-cv-04069)
District Judge: Honorable John M. Vazquez

---

Argued January 8, 2019

Before: AMBRO, KRAUSE, and FUENTES, Circuit Judges

(Dated April 18, 2019 )

---

PETITION FOR CERTIFICATION OF QUESTIONS OF LAW

---

To the Honorable Justices of the New Jersey Supreme Court:

This matter came before the United States Court of Appeals for the Third Circuit on appeal from an order of the United States District Court for the District of New Jersey entered on December 11, 2017. The District Court granted summary judgment in favor of the defendants, Fike Corporation and Suppression Systems Incorporated ("Fike"), and

against the plaintiff, Sun Chemical Corporation ("Sun"). This appeal requires us to determine, among other things, whether Sun's claim under the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-19, is subsumed in whole or in part by the Products Liability Act, N.J.S.A. 2A:58C-1 *et seq.*, and, if that claim is not entirely subsumed, what categories of damages Sun can recover under the CFA based on alleged misrepresentations made by Fike about an explosion suppression system it sold to Sun.

We believe our answers to these questions depend on important and unresolved questions of state law that are appropriate for certification. We respectfully request that the Supreme Court of New Jersey grant this petition.

## I. Reasons for Certification

Under New Jersey Court Rule 2:12A-1, the Supreme Court of New Jersey may answer a question certified to it by our Court "if the answer may be determinative of an issue in litigation pending in the Third Circuit and there is no controlling appellate decision, constitutional provision, or statute" in New Jersey. We have not found any binding legal authority that squarely addresses the questions presented in this case. We believe the New Jersey Supreme Court is best suited to answer these questions, as they involve interpreting state law and determining New Jersey public policy.

## II. Background[1]

Sun has long operated an ink production facility in New Jersey. In May 2012 it purchased a new dust collection system. The system was intended to suck dust away

---

[1] Per New Jersey Court Rule 2:12A-4(b), this petition for certification sets forth "what [we] believe[] to be the relevant facts."

from production areas into a centralized storage container on the roof of the facility. On Fike's recommendation, Sun also purchased from Fike an "explosion isolation and suppression" system (for convenience, "suppression system") that was intended to prevent and contain explosions originating in the dust collection system. During the negotiation process, Fike made various written and oral communications to Sun about the kinds of suppression systems that Fike manufactures and the specifications of the particular system that Fike would install in Sun's facility. That installation occurred in October 2012.

During the first full day of the suppression system's regular operation, a fire ignited in the dust collection system. The suppression system discharged chemicals into ventilation ducts connected to that system. An alarm on its control panel also activated, although none of the workers noticed because it was less than 5 decibels and no one was monitoring it. Several employees working in the facility attempted to extinguish the fire with extinguishers. A few minutes later, an explosion occurred in or near the dust collection system, sending a fireball out of the dust collection ducts, injuring seven Sun employees and causing significant property damage in the facility.

Sun contends that Fike is liable for all injuries and damages related to the explosion, plus treble damages, attorneys' fees, and costs, under the CFA. In total, Sun seeks to recover more than $15 million. In support of this recovery, it asserts that Fike made numerous material misrepresentations concerning the system and that, due to those misrepresentations, it suffered combined economic losses and property damages that are

all compensable under the CFA. Sun's complaint asserts a single count that includes all of these purported misrepresentations and damages.

The misrepresentations alleged fall into four main categories. First, Sun claims that Fike represented falsely that the suppression system would effectively suppress and isolate fires around the dust collection system to prevent explosion. This was a false representation, according to Sun, because the system was unable to suppress and isolate fires or prevent explosions, as demonstrated by the explosion that caused its alleged damages in this case.

Second, Sun asserts that Fike represented falsely that the system would have an "audible alarm," yet it was not audible in the working environment of the facility.

Third, Sun alleges that Fike represented falsely that the system would comply with an industry standard, "FM 5700." Instead, the system installed in Sun's facility did not have the pressure detectors, system enclosure, or alarm features that are required for compliance with FM 5700.

Fourth, Sun claims that Fike represented falsely that the system had never experienced a failure in the field when its own business records showed otherwise.

In the District Court, Sun and Fike filed cross-motions for summary judgment. The District Court granted Fike's motion and denied Sun's motion as to all of Sun's contentions under the CFA. Sun appealed to us.

**III. Discussion**

Like many states, New Jersey has enacted statutes and fashioned doctrines to determine the liability that commercial actors incur when they place a product into the

stream of commerce. Among those statutes are the Uniform Commercial Code ("UCC"), N.J.S.A. 12A:1-101 *et seq.*, the Products Liability Act ("PLA"), N.J.S.A. 2A:58C-1 *et seq.*, and the CFA, N.J.S.A. 56:8-1 *et seq*. Among those doctrines is the "economic loss" doctrine, which generally bars the recovery of purely economic losses through claims based on tort principles. *See Alloway v. Gen. Marine Indus., LP*, 149 N.J. 620, 627, 695 A.2d 264, 267–68 (1997). This case falls at the intersection of the UCC, the PLA, the CFA, and the economic loss doctrine.

Broadly stated, Sun seeks to recover a combination of economic and non-economic losses under the CFA based on alleged misrepresentations by Fike about the features and capabilities of a product (the suppression system). The alleged non-economic damages are roughly $286,000 in property damage to Sun's ink production facility. The alleged economic damages are more complicated. A small portion of them is the price of the product, *i.e.*, the $26,000 Sun paid for the suppression system. The remainder includes species of consequential damages (each rounded off)—$1.3 million in workers' compensation payments that Sun made in favor of employees injured in the explosion; $2 million in fees paid to attorneys and others in connection with governmental investigations prompted by the explosion; $1.2 million in classic "lost profits" damages arising from increased labor and distribution costs due to the explosion; and $529,000 in litigation costs incurred to defend litigation prompted by the explosion. Sun asserts that all of these categories of damages are compensable under the CFA.

Given the resemblance of Sun's claim to a product liability action, we began our analysis by considering whether the PLA covers the claim. It is settled that, if a claim

falls within the PLA's definition of "product liability action," it is subsumed within the PLA. *See, e.g.*, *Sinclair v. Merck & Co.*, 195 N.J. 51, 65–66, 948 A.2d 587, 595–96 (2008). Under the statute, a product liability action means "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). The statute goes on to define "harm" as

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

N.J.S.A. 2A:58C-1(b)(2).

Sun's claim arguably is subsumed entirely by the PLA because it involves the assertion that Sun suffered harm when the suppression system failed to prevent the explosion in Sun's ink production facility. It therefore may be a claim "for harm caused by a product" under N.J.S.A. 2A:58C-1(b)(3). Sun argues, however, that we cannot construe the PLA's preclusive scope so broadly. Rather than asserting a product liability claim, it says, it is making a claim based on its reliance on Fike's affirmative misrepresentations about the features and capabilities of the product. Claims based on affirmative misrepresentations can be brought under the CFA, it asserts, even though the damages claimed for those representations involved personal injuries to third parties and some property damage. There is room for Sun's argument per the plain text of the statute.

For guidance, we then turned to New Jersey decisions addressing the allocation of liability for economic losses arising from commercial sales like this one. Relevant are *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985) ("*Spring Motors*"); *Alloway v. General Marine Industries, L.P.*, 149 N.J. 620, 695 A.2d 264 (1997) ("*Alloway*"); *Lemelledo v. Beneficial Management Corp. of America*, 150 N.J. 255, 696 A.2d 546 (1997) ("*Lemelledo*"); *In re Lead Paint Litig.*, 191 N.J. 405, 924 A.2d 484 (2007) ("*Lead Paint*"); *Sinclair v. Merck & Co.*, 195 N.J. 51, 948 A.2d 587 (2008) ("*Sinclair*"); *Real v. Radir Wheels, Inc.*, 198 N.J. 511, 969 A.2d 1069 (2009) ("*Radir Wheels*"); *Lee v. Carter-Reed Co.*, 203 N.J. 496, 4 A.3d 561 (2010) ("*Carter-Reed*"); and *Dean v. Barrett Homes, Inc.*, 204 N.J. 286, 8 A.3d 766 (2010) ("*Dean*").

From *Spring Motors* and *Alloway*, we know that, in general, "tort principles are better suited to resolve claims for personal injuries or damage to other property." *Alloway*, 149 N.J. at 627, 695 A.2d at 267. By contrast, "[c]ontract principles more readily respond to claims for economic loss" arising from a commercial transaction. *Id.* at 627, 695 A.2d at 267–68; *see also Spring Motors*, 98 N.J. at 579–80, 489 A.2d at 672–73. Neither *Spring Motors* nor *Alloway* involved a CFA claim, however, and neither addressed the extent to which the PLA precludes claims under the CFA.

We take further guidance from *Lemelledo*. There the Court explained that, when deciding whether the CFA is displaced by another law, a court must consider two competing concerns: first, "the Legislature does not intentionally subject regulated entities to clearly conflicting administrative regimes," and, second, "it should ordinarily be assumed that the CFA applies to the covered practice." 150 N.J. at 268, 696 A.2d

at 553. We thus draw from *Lemelledo* the principle that, when reviewing claims under the CFA, we must examine whether the imposition of liability under the CFA would "clearly conflict[]" with another of New Jersey's administrative regimes. *Id.*

More guidance comes from *Lead Paint* and *Sinclair*. In the former, the Court did not expressly address the CFA, but it stated broadly that the claims asserted in that case—claims based on the defendants' failure to warn about the health risks of lead paint—would be recognized "*only as* product liability claims" under the PLA. *Lead Paint*, 191 N.J. at 436, 924 A.2d at 503 (emphasis added). That was so, the Court explained, because "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *Id.* (citing N.J.S.A. 2A:58C-1(b)(3)). Along the same lines, the Court held in *Sinclair* that purchasers of a pharmaceutical drug could not recover under the CFA based on the drug manufacturer's alleged failure to disclose the drug's health risks. 195 N.J. at 65–66, 948 A.2d at 595–96. The Court dismissed those CFA claims because

> [t]he heart of plaintiffs' case is the potential for harm caused by [the company's] drug. It is obviously a product liability claim. Plaintiffs' CFA claim does not fall within an exception to the PLA, but rather clearly falls within its scope. Consequently, plaintiffs may not maintain a CFA claim.

*Sinclair*, 195 N.J. at 66, 948 A.2d at 596.

From *Lead Paint* and *Sinclair* we discern the PLA bars claims under the CFA that are based on a seller's non-disclosure of a product's risk of causing injury to persons or

property. But that lesson does not squarely address Sun's CFA claim here, which is based on affirmative misrepresentations concerning a product's features and capabilities.

This brings us to *Radir Wheels* and *Carter-Reed.* The first sustained a CFA claim based on a seller's misrepresentation about the quality of a product—specifically, a misrepresentation concerning "the condition" of a car. 198 N.J. at 524–27, 969 A.2d at 1077–79. Based on that misrepresentation, your Court allowed the purchaser to recover damages equal to the benefit of the bargain—*i.e.*, the amount by which the plaintiff overpaid due to the misrepresentation. *Id.* at 517–18, 527, 969 A.2d at 1073, 1079. A similar ruling is implicit in *Carter-Reed*, which appeared to acknowledge the viability of a claim under the CFA based on a drug manufacturer's "false representations about [the fat-reducing benefits of] its product." 203 N.J. at 506–07, 526–28, 4 A.3d at 567, 579–80. Together, *Radir Wheels* and *Carter-Reed* appear to authorize a plaintiff to recover under the CFA at least the amount she overpays for a product due to the seller's affirmative misrepresentations about its features or capabilities.

As applied to our case, they could authorize Sun's claim under the CFA based on alleged misrepresentations about the suppression system. But neither *Radir Wheels*, nor *Carter-Reed*, nor any other decision we have identified, addresses whether we should allow such a claim when, in addition to seeking damages for the amount the buyer overpaid for a product, it also seeks other categories of damages—including consequential economic damages that stem from personal injuries to third parties and property damage.

Finally, we consider *Dean*. That case did not involve a CFA claim, but it contained analysis that could be relevant here. Looking back at *Alloway* and similar decisions concerning economic loss, the *Dean* Court stated that a claim under the CFA is "contractual" in nature and suggested that it could be used to recover "economic losses" in the same manner as a contract action—including, perhaps, indirect consequential losses like those Sun claims here. 204 N.J. at 297, 8 A.3d at 772. But *Dean* was a case under the PLA, and we are hesitant to extend its *dicta* to sustain Sun's CFA claim here. We thus reach the end of the relevant guidance and remain unsure how you would resolve the questions presented by Sun's claim.

In certifying the questions below, we underscore the economic significance we perceive is attached to our resolution of Sun's claim. The defendants in this case sold a piece of industrial equipment for approximately $26,000. In the course of negotiations over the equipment, the defendants made various representations about the features of the equipment and its capabilities. Based on the alleged inaccuracy of several of those representations, Sun seeks to recover more than $5 million in consequential economic damages (including workers' compensation payments, attorneys' fees, and lost profits). While the PLA may allow recovery and punitive damages for some of the same injuries, under the CFA, that $5 million could be trebled to more than $15 million in damages. Given the stakes in this allocation of economic-loss risk arising from a commercial transaction—both for the companies in this case and others operating in the state of New Jersey—we petition you to certify the following questions of law.

## IV. Questions for Consideration[2]

NOW THEREFORE, the following questions of law are certified to the Supreme Court of New Jersey for disposition according to the rules of that Court:

1. When a court decides a CFA claim based on an affirmative and material misrepresentation about the features of a product, but the plaintiff is seeking damages for harm caused by the product's failure to conform to those features, what criteria should the court consider to determine whether the claim may proceed as a CFA claim or is subsumed under the PLA?

2. In determining whether a claim may proceed under the CFA or is subsumed under the PLA, what significance should a court place on a plaintiff's assertion that its harm resulted primarily from physical injury to third parties (like employees) rather than property damage or personal physical injury?

3. Where a complaint pleads a single CFA claim that asserts multiple harms, some of which fall within the ambit of the PLA, and others which do not, is the entire claim subsumed by the PLA or should the distinct categories of harm be deemed severable claims, some of which would not be subsumed and could instead be pursued under the CFA?

4. Under the CFA, when can a commercial purchaser of a product recover consequential economic losses—such as workers' compensation payments, attorneys' fees incurred in litigation, fees incurred in government investigations, and increased labor or production costs—based on alleged misrepresentations the seller made about the features and capabilities of the product?

We shall retain jurisdiction over the appeal pending resolution of this request for certification.

A True Copy:

Patricia S. Dodszuweit, Clerk

By the Court,

s/ Thomas L. Ambro, Circuit Judge

Dated: April 19, 2019

---

[2] Our framing of the questions presented is, of course, subject to your reformulation and should not restrict your consideration of any related issues. *See* N.J. Court Rule 2:12A-2.